UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


CARRIE M. JONES,

    Plaintiff,

v.                                CASE NO. 07-CV-14667

COMMISSIONER OF             DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.


**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 17.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 8 at 323.) Plaintiff's relevant employment history included work as a cashier from November 2001 to August 2002, a teacher's aid at a daycare facility for 6 years, a cook/cashier for 3 years, and a cashier for one year. (Tr. at 92-97.)

Plaintiff filed the instant claims on October 11, 2002, and October 16, 2003, alleging that she became unable to work on August 5, 2002. (Tr. at 59, 62, 318.) The claims were denied initially and upon reconsideration. (Tr. at 33,35,40,44,49.) As Plaintiff notes, Defendant initially proposed a finding that Plaintiff's uveitis[1] met Listing 2.02, but a reviewing Disability Determination Service ("DDS") physician opined that Plaintiff's condition would resolve itself within a year, so the proposed finding was reversed. (Dkt. 10 at 8; Tr. at 285.) In denying Plaintiff's claims, the Defendant Commissioner considered blindness, low vision, visual disturbances, carpal tunnel, stomach pain, and headaches as possible bases of disability. (*Id.*)

On August 23, 2005, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the case *de novo*. In a decision dated January 19, 1006, the ALJ found that Plaintiff was not disabled. (Tr. at 16-25.) Plaintiff requested a review of this decision on February 16, 2006. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[2] (AC-1 to -6, Tr. at 9, 288-319), on October 11, 2007, the Appeals Council

---

[1] Uveitis is defined as inflammation of structures within and around the eye, including the iris. 6 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE U-69.

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC"

denied Plaintiff's request for review. (Tr. at 6-8.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On October 31, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve

---

exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes

that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

5

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel*, 74 Fed. App'x at 524. "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D. **Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Dwight E. Smith, M.D., who, after having addressed an upper respiratory infection,[3] concluded that Plaintiff could return to work on April 19, 1999, with no restrictions. (Tr. at 149-50.)

In June of 1999, a diagnostic imaging was made of Plaintiff's left radius and ulna which revealed "some mild degenerative changes involving the glenohumeral joint" but also found "[n]o fracture, subluxation, or bone destruction displayed." (Tr. at 140.) Plaintiff underwent an EMG and nerve conduction testing of the upper extremities in September of 1999 revealing normal test results. (Tr. at 138.) In December of 1999, the DDS sent Plaintiff to Leonidas Rojas, M.D., for an examination. (Tr. at 152-57.) Dr. Rojas concluded that Plaintiff "is known to have arthritis of the cervical spine as well as both shoulders, particularly on the left side [and that] [t]here is mild

---

[3]A pulmonary function test conducted in February of 1999 showed "borderline obstruction" premedication and "mild obstruction" post-medication. (Tr. at 147.)

restriction on the left shoulder." (Tr. at 154.) He also noted that Plaintiff "has pain and other symptoms in both wrists and hands consistent with arthritis at those levels but she also seems to have carpal tunnel syndrome bilaterally." (*Id.*) Finally, he stated that "there is clinical evidence of left sided cervical radiculopathy." (*Id.*) The doctor also reported that Plaintiff demonstrated normal range of motion in the lumbar spine and wrists. (Tr. at 155-56.) Limitations in range of motion were seen in the cervical spine, shoulders and lift elbow. (*Id.*)

A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician in March of 2000 concluded that Plaintiff is able to occasionally lift up to 50 pounds, frequently lift up to 25 pounds, stand or walk for at least 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and that Plaintiff has the unlimited ability to push and pull. (Tr. at 120.) There were no postural, manipulative, visual, communicative, or environmental limitations found. (Tr. at 121-23.) The assessment also noted that there was no treating or examining source statements regarding the claimant's physical capacities in the file. (Tr. at 125.)

In January of 2001, Plaintiff underwent surgery to remove a bowel obstruction, at which time a quarter of her small intestine was removed. (Tr. at 159.) In November of 2001, Plaintiff sought treatment for abdominal pain in the emergency room at Sinai-Grace Hospital. (Tr. at 158-63.) The emergency room doctor, Kevin McDonald, M.D., noted that Plaintiff's vital signs, eyes, ears, nose throat, neck, cardiovascular, rectal, lymphatic, musculoskeletal, skin, and neurologic systems were all normal. (Tr. at 160.) The doctor noted that as to the gastrointestinal system, Plaintiff was "extremely tender to palpitation in the right upper quadrant," although x-rays taken of the abdomen were normal. (Tr. at 160.)

In September of 2002, Plaintiff again sought treatment in an emergency room setting at the Detroit Receiving Hospital for abdominal pain and possible bowel obstruction. (Tr. at 172-74.)

Plaintiff underwent an esophagogastroduodenoscopy which revealed "active diffuse gastritis with bile reflux," but was otherwise normal. (Tr. at 162-66.) The resultant recommendation was "[s]ymptomatic treatment" and possible testing. (Tr. at 166.) At the same time, a stomach biopsy was performed, which diagnosed reflux gastritis. (Tr. at 167.) There was no evidence of obstruction at that time. (Tr. at 170.) Later that month, Plaintiff underwent a colonoscopy/sigmoidoscopy which was negative. (Tr. at 175-80.) The doctor also noted that Plaintiff was only 5 days "post lower endoscopy," and that the doctor who performed that test "found no source for her pre-existing abdominal pain." (Tr. at 180.)

Plaintiff sought additional emergency treatment for abdominal pain in October of 2002. She was diagnosed with a "[p]ossible infectious diarrhea versus some other colonic pathology" and was given a prescriptive antibiotic. (Tr. at 188.) It was also noted that the "etiology" of her abdominal pain was "unclear." (Tr. at 190.)

In March of 2004, Plaintiff was certified as legally blind since September of 2003 by Matthew Burman, M.D., who began treating her that same month. (Tr. at 191, 199, 265.) In December of 2003, pursuant to a request from the Wayne County Family Independence Agency ("FIA"), Dr. Burman indicated that Plaintiff had a "history of severe oveitis, visual field constriction both eyes, error of refraction, [and] statutory blindness." (Tr. at 198.) Dr. Burman concluded that Plaintiff is "NOT able to perform the basic work activities and activities of daily living of a person her age" and that she "needs regular Medicaid now, and Disability Medicare with regular Medicaid in order to obtain the consultative services at the tertiary Opthalmology Center" because "[n]owhere takes the Wayne County PCMS that she had when we tried to refer her in September." (*Id.*) At the request of the Social Security Administration, Dr. Burman also performed an examination of Plaintiff in January 2004, wherein he noted that Plaintiff's best

"corrected visual acuity for each eye" is "20 L.P." Dr. Burman noted that there are no "objective findings that are expected to cause 20/200 > 12 mo" and that Plaintiff's "symptoms of excruciating headaches and eye pain are subjective." (Tr. at 194.) He also noted that Plaintiff "can sit, stand, walk, lift and carry and handle objects, hear, speak, but cannot see to travel by herself." (Tr. at 195.) In August of 2005, Dr. Burman wrote a letter to counsel in which he stated that results from a visual field test conducted by another doctor (Dr. Van Stavern) of the Kresge Eye Institute in January and March of 2005 indicated Plaintiff has a "severe constriction" that "appeared to be pathologic rather than tubular - that is a legitimate visual field constriction." (Tr. at 265.) He also noted that this doctor "was able to achieve a best corrected vision right eye 20/30, left eye 20/50." (*Id.*) He also noted that, "[s]ince all of the laboratory tests and MRI all came back negative, no neurogenic etiology has yet been identified." (*Id.*)

In November of 2004, Dr. Fahim Ibrahim, M.D., also examined Plaintiff at the request of the FIA. (Tr. at 207.) He determined that without aid "counting fingers at 1 foot, both eyes, [Plaintiff's vision] improves to 20/70 both eyes with a +2.0 [and that] [t]he patient reads 20/60 right eye with an add of +2.0 and 20/40 left eye with an add of +2.0." (*Id.*) Dr. Ibrahim's assessment was that Plaintiff had a "[h]istory of uveitis" but had "[n]o ocular pathology seen on today's exam" such that he "cannot find a reason for this very poor vision." (*Id.*) Eight days after his examination, Dr Ibrahim completed a "Medical Source Statement." (Tr. 212-13.) He stated that Plaintiff's ability to see was "unlimited" by impairments. (Tr. at 212.) He also found no communicative or environmental limitations. (Tr. at 213.)

Apparently due to an automobile collision on January 12, 2004, Plaintiff tore the rotator cuff of her right shoulder. (Tr. at 259-64; Dkt. 10 at 18.) Plaintiff's treating physician, James Beale, Jr., M.D., performed surgery to repair a torn rotator cuff on Plaintiff's right shoulder in November

of 2004. (Tr. at 249.) An MRI of Plaintiff's right shoulder taken in February of 2005 showed "[n]o evidence of a retracted full thickness rotator cuff tear, status post rotator cuff repair [and] Hill-Sachs deformity of the humeral head." (Tr. at 230-36.) Pursuant to a referral from Dr. Beale, Plaintiff underwent physical therapy for shoulder pain from March through April of 2005. (Tr. at 217-27.) Plaintiff was discharged from therapy in late April 2005, after failing to attend scheduled therapy sessions. (Tr. at 217.) Her treating therapist opined that the condition of Plaintiff's shoulder had "plateaued." (*Id.*)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, i.e., August 3, 2003, and that Plaintiff meets the insured status requirements through the date of his decision. (Tr. at 24.) At step two, the ALJ found that Plaintiff's history of uveitis with associated symptoms chronic headaches and photophobia and rotator cuff repair surgeries on July 1, 2004, and November 19, 2004, were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work as a cashier, cook or teacher's aide. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of unskilled jobs available such as bench jobs (sorter, packer and wrapper) numbering 5.000 in Southeastern Michigan and 10,000 in the state of Michigan. (*Id.*)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (*id.*), and he thus concluded that

11

Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 24.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff first contends that the ALJ failed to give proper weight to the medical opinions of Plaintiff's treating and examining physicians, particularly as to her eyesight. (Dkt. 10 at 13-20.) In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). *See Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987)).

In the instant case, the ALJ did not give Dr. Burman's opinion controlling or even significant weight because it was not supported by the medical evidence of record, such as evidence that Plaintiff's visual acuity fluctuated greatly, her pain was of unknown etiology, and evidence that Plaintiff's best corrected vision results far exceeded Dr. Burman's findings and the statutory blindness standards. (Tr. at 21-22.) In addition, the ALJ found that Dr. Burman's opinion was inconsistent with other medical evidence of record, such as the findings of Dr. Ibrahim. (Tr. at 22.)

I suggest that the ALJ properly gave specific reasons for the weight given the medical opinions and that substantial evidence supports the ALJ's determination that Dr. Burman's opinion was not supported by objective medical evidence and was inconsistent with the other substantial evidence in the record. Although Dr. Burman concluded that Plaintiff is "NOT able to perform the basic work activities and activities of daily living of a person her age" (Tr. at 198), he also noted that there are no "objective findings that are expected to cause 20/200 > 12 mo" and that

14

Plaintiff's "symptoms of excruciating headaches and eye pain are subjective." (Tr. at 194.) Dr. Burman's opinion contradicts Plaintiff's own stated ability to care for her daily needs (Tr. at 103), and Dr. Burman's own observation that Plaintiff "can sit, stand, walk, lift and carry and handle objects, hear, speak, but cannot see to travel by herself." (Tr. at 195.)

In addition, Dr. Burman's opinion is inconsistent with the objective, medical findings of Dr. Van Stavern of the Kresge Eye Institute that Plaintiff was able to "achieve a best corrected vision right eye 20/30, left eye 20/50." (*Id.*) Dr. Burman's opinion is not even supported by his own findings that, "[s]ince all of the laboratory tests and MRI all came back negative, no neurogenic etiology has yet been identified." (Tr. at 265.) Finally, as noted by the ALJ, Dr. Burman's opinion is also contradicted by the examining physician's findings that Plaintiff's vision "improves to 20/70 both eyes with a +2.0 [and that] [t]he patient reads 20/60 right eye with an add of +2.0 and 20/40 left eye with an add of +2.0" and that there is no medical reason to explain Plaintiff's poor vision. (Tr. at 207.)

I further suggest that substantial evidence supports the ALJ's conclusions as to Plaintiff's other allegations of disabling impairments. Subsequent to Plaintiff's abdominal surgery, one of her treating physicians who performed diagnostic tests "found no source for her pre-existing abdominal pain." (Tr. at 180.) Subsequent to her auto accident and attendant shoulder surgery, an MRI showed post-surgical changes and "[n]o evidence of a retracted full thickness rotator cuff tear . . . ." (Tr. at 230.) Plaintiff was discharged from follow-up physical therapy in part because she failed to attend scheduled therapy sessions. (Tr. at 217.)[4]

---

[4] I note that the Commissioner's regulations provide for a denial of benefits where a claimant fails to follow prescribed treatment. *Young v. Califano*, 633, F.2d 469, 472-73 (6th Cir. 1980). *See* 20 C.F.R. § 404.1530. It has been held in this district that the failure to follow a prescribed course of treatment which could restore the ability to work is a proper ground for the denial of benefits. *Hamilton v. Sec'y of Health & Human Servs.*, No. 91-CV-73589, 1992 WL 346304 (E.D. Mich. Aug. 25, 1992) (Rosen, J.).

15

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff herself that she cooks, bathes and visits people. (Tr. at 103, 341-42.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Within his motion for summary judgment, counsel for Plaintiff argues that post-decision evidence not seen by the ALJ but submitted to the Appeals Council justifies the remand of this case to the Commissioner for reconsideration under Sentence Six of 42 U.S.C. § 405(g). A "sixth sentence remand" under section 405(g) occurs only where the remand is for new evidence that was previously unavailable, along with several other restrictions. Upon an examination of the legislative history, the Sixth Circuit has concluded that this provision in section 405(g) strictly limits a federal court's discretion to remand a case to the Commissioner for consideration of new evidence. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 680-81 (6th Cir. 1989); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). In *Willis*, the court noted that in amending § 405(g) to include these limitations, Congress sought to prevent the federal courts from remanding to the Commissioner merely because the particular judge disagrees with the outcome of the case. *Id.* at 553 (citing S. Rep. No. 96-408, reprinted in 3 U.S.C.C.A.N. 1277, 1336-37 (1980)).

In *Brainard*, citing *Oliver*, the court stated:

[W]here <u>a party</u> presents new evidence . . ., this court can remand for further consideration of the evidence <u>only</u> where <u>the party</u> seeking remand shows that the

new evidence is material and that there was good cause for not presenting the evidence in a prior proceeding.

*Brainard*, 889 F.2d at 681 (emphasis added).

Thus, the party seeking remand bears the burden of showing that the remand is appropriate. *Oliver*, 804 F.2d at 966; *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

In this circuit, there are three prerequisites to the exercise of a court's authority to remand. The party seeking remand under section 405(g) has the burden of establishing that the three prerequisites to a reviewing court's authority to remand are satisfied. First, the party must establish that there is new evidence. "New evidence" is evidence which is not cumulative of the evidence already considered by the ALJ. *See Fazio v. Heckler*, 750 F.2d 541, 543 (6th Cir. 1984); *Wilson v. Sec'y of Health & Human Servs.*, 733 F.2d 1181, 1182-83 (6th Cir. 1984). Second, the party requesting remand must establish that the evidence is material to the disability determination. Material evidence is evidence which "bears substantially and directly" on the issue of disability. *Fazio*, 750 F.2d at 542. It has been held in this circuit that in order to satisfy the burden of proof as to materiality, the party seeking remand must demonstrate that there is a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980); *Sizemore*, 865 F.2d at 711. Finally, the party seeking remand has the burden of demonstrating good cause for his or her failure to incorporate the new evidence into the prior administrative proceeding.

I suggest that the remand proposed by counsel for Plaintiff fails to meet the conditions set forth in this circuit for a Sixth Sentence remand. Whether there may be "good cause" for failing to incorporate the exhibits proffered by counsel is irrelevant, as the proffered evidence cannot be

considered "material" because the evidence has already been considered and rejected by the Appeals Council as a basis for a finding of disability.

As pointed out above, it is essential in this circuit that to satisfy the burden of proof as to materiality, the party seeking remand must demonstrate a reasonable probability that the Commissioner would have reached a different result if presented with the evidence. In fact, in this case, the Commissioner was presented with this very evidence. It therefore cannot, under the law of this circuit, be considered "material." Moreover, I suggest that to require the Commissioner to review evidence which he has already once rejected would be an entirely redundant and unavailing exercise of scarce administrative resources. I therefore suggest that the request to remand contained in Plaintiff's motion for summary judgment be denied.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*

*Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                     s/ *Charles E Binder*
                                                  CHARLES E. BINDER
Dated: August 4, 2008                            United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Kenneth Laritz, Janet Parker, and the Commissioner of Social Security, and served on U.S. District Judge Ludington in the traditional manner.

Date: August 4, 2008            By     s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder