UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARRIE M. JONES,

        Plaintiff,

                              Case Number 07-14667-BC
v.                              Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____ /

**<u>ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

On October 16, 2003, Plaintiff Carrie Jones ("Plaintiff") filed applications with Defendant Commissioner of Social Security ("Defendant" or "Commissioner") for disability and disability insurance benefits, and supplemental security income.[1] Plaintiff alleged she is disabled due to several impairments, including legal blindness, abdominal pain, and constant pain in her neck, back, and right shoulder. On February 23, 2004, Defendant denied Plaintiff's applications and Plaintiff sought de novo review by an administrative law judge ("ALJ").

The ALJ held a hearing on August 23, 2005, and issued a decision on January 19, 2006. The ALJ concluded that Plaintiff was not disabled for two reasons. First, she did not have a severe impairment, expected to last for a continuous period of twelve months, meeting or equal to the listed impairments. Second, the ALJ found Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform a limited range of light work and there are substantial jobs

---

[1] On September 15, 1999, June 15, 2001, and October 11, 2002, Plaintiff also filed applications with Defendant for disability and disability insurance benefits, and supplemental security income. The Commissioner denied these claims, and Plaintiff did not appeal the decisions.

existing in the national economy that Plaintiff can perform. On or about February 16, 2006, Plaintiff sought review with the Appeals Council. On or about March 20 and 22, and June 12 and 19, 2006, Plaintiff submitted additional evidence to the Appeals Council. On October 11, 2007, the Appeals Council acknowledged receipt of the additional evidence and denied Plaintiff's request for review. The Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 6).

On October 31, 2007, Plaintiff sought review of the ALJ's decision before this Court. The case was referred to Magistrate Judge Charles E. Binder for report and recommendation. On February 1, 2008, Plaintiff filed a motion for summary judgment, and on April 28, 2008, Defendant filed a motion for summary judgment. On August 4, 2008, the magistrate judge issued a report and recommendation, recommending that this Court affirm the ALJ's decision, grant Defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment. The magistrate judge concluded that the ALJ's decision was based on substantial evidence, that the ALJ gave proper weight to the medical opinions of Plaintiff's treating and examining physicians, and that the additional evidence submitted to the Appeals Council did not require the Court to remand the case to the ALJ.

On August 12, 2008, Plaintiff objected to the report and recommendation, contending that the Court should not grant summary judgment in favor of Defendant, and that the Court should remand the case to the ALJ for consideration of the additional evidence that Plaintiff submitted to the Appeals Council. Defendant did not file a response to Plaintiff's objections. For the reasons

stated below, and with a noted reservation, the Court will **ADOPT** the report and recommendation, **GRANT** Defendant's motion for summary judgment, and **DENY** Plaintiff's motion for summary judgment.

I

Plaintiff does not dispute the facts as described by the magistrate judge. Rather, she contends that the facts do not amount to substantial evidence supporting the ALJ's decision. The magistrate judge summarized the facts as follows:

> A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Dwight E. Smith, M.D., who, after having addressed an upper respiratory infection,[2] concluded that Plaintiff could return to work on April 19, 1999, with no restrictions. (Tr. at 149-50.)
>
> In June of 1999, a diagnostic imaging was made of Plaintiff's left radius and ulna which revealed "some mild degenerative changes involving the glenohumeral joint" but also found "[n]o fracture, subluxation, or bone destruction displayed." (Tr. at 140.) Plaintiff underwent an EMG and nerve conduction testing of the upper extremities in September of 1999 revealing normal test results. (Tr. at 138.) In December of 1999, the DDS sent Plaintiff to Leonidas Rojas, M.D., for an examination. (Tr. at 152-57.) Dr. Rojas concluded that Plaintiff "is known to have arthritis of the cervical spine as well as both shoulders, particularly on the left side [and that] [t]here is mild restriction on the left shoulder." (Tr. at 154.) He also noted that Plaintiff "has pain and other symptoms in both wrists and hands consistent with arthritis at those levels but she also seems to have carpal tunnel syndrome bilaterally." (*Id.*) Finally, he stated that "there is clinical evidence of left sided cervical radiculopathy." (*Id.*) The doctor also reported that Plaintiff demonstrated normal range of motion in the lumbar spine and wrists. (Tr. At 155-56.) Limitations in range of motion were seen in the cervical spine, shoulders and lift elbow. (*Id.*)
>
> A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician in March of 2000 concluded that Plaintiff is able to occasionally lift up to 50 pounds, frequently up to 25 pounds, stand or walk for at least 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and that Plaintiff has the unlimited ability to push and pull. (Tr. at 120.) There were no postural, manipulative, visual, communicative, or environmental limitations found. (Tr. at 121-23.) The assessment also noted that there were no treating or examining source statements regarding the claimant's physical capacities

---

[2] A pulmonary function test conducted in February of 1999 showed "borderline obstruction" premedication and "mild obstruction" post-medication. (Tr. At 147).

-3-

in the file. (Tr. at 125)

In January of 2001, Plaintiff underwent surgery to remove a bowel obstruction, at which time a quarter of her small intestine was removed. (Tr. at 159.) In November of 2001, Plaintiff sought treatment for abdominal pain in the emergency room at Sinai-Grace Hospital. (Tr. at 158-63.) The emergency room doctor, Kevin McDonald, M.D., noted that Plaintiff's vital signs, eyes, ears, nose throat, neck, cardiovascular, rectal, lymphatic, musculoskeletal, skin, and neurologic systems were all normal. (Tr. at 160.) The doctor noted that as to the gastrointestinal system, Plaintiff was "extremely tender to palpitation in the right upper quadrant," although x-rays taken of the abdomen were normal. (Tr. at 160.)

In September of 2002, Plaintiff again sought treatment in an emergency room setting at the Detroit Receiving Hospital for abdominal pain and possible bowel obstruction. (Tr. at 172-74.) Plaintiff underwent an esophagogastroduodenoscopy which revealed "active diffuse gastritis with bile reflux," but was otherwise normal. (Tr. at 162-66.) The resultant recommendation was "[s]ymptomatic treatment" and possible testing. (Tr. at 166.) At the same time, a stomach biopsy was performed, which diagnosed reflux gastritis. (Tr. at 167.) There was no evidence of obstruction at that time. (Tr. at 170.) Later that month, Plaintiff underwent a colonoscopy/sigmoidoscopy which was negative. (Tr. at 175-80.) The doctor also noted that Plaintiff was only 5 days "post lower endoscopy," and that the doctor who performed that test "found no source for her pre-existing abdominal pain." (Tr. at 180.)

Plaintiff sought additional emergency treatment for abdominal pain in October of 2002. She was diagnosed with a "[p]ossible infectious diarrhea versus some other colonic pathology" and was given a prescriptive antibiotic. (Tr. at 188.) It was also noted that the "etiology" of her abdominal pain was "unclear." (Tr. at 190.)

In March of 2004, Plaintiff was certified as legally blind since September of 2003 by Matthew Burman, M.D., who began treating her that same month. (Tr. at 191, 199, 265.) In December of 2003, pursuant to a request from the Wayne County Family Independence Agency ("FIA"), Dr. Burman indicated that Plaintiff had a "history of severe oveitis, visual field constriction both eyes, error of refraction, [and] statutory blindness." (Tr. at 198.) Dr. Burman concluded that Plaintiff is "NOT able to perform the basic work activities and activities of daily living of a person her age" and that she "needs regular Medicaid now, and Disability Medicare with regular Medicaid in order to obtain the consultative services at the tertiary Opthalmology Center" because "[n]owhere takes the Wayne County PCMS that she had when we tried to refer her in September." (*Id.*) At the request of the Social Security Administration, Dr. Burman also performed an examination of Plaintiff in January 2004, wherein he noted that Plaintiff's best "corrected visual acuity for each eye" is "20 L.P." Dr. Burman noted that there are no "objective findings that are expected to cause 20/200 > 12 mo" and that Plaintiff's "symptoms of excruciating headaches and eye pain are subjective." (Tr. at 194.) He also noted that Plaintiff "can sit, stand, walk, lift and carry and handle objects, hear, speak, but cannot see to travel by herself." (Tr. at 195.) In August of 2005, Dr. Burman wrote a letter to counsel in which he stated that results from a visual field test conducted by another doctor (Dr. Van Stavern) of the Kresge Eye Institute in January and March of 2005 indicated Plaintiff has a "severe constriction" that "appeared to be pathologic

rather than tubular - that is a legitimate visual field constriction." (Tr. at 265.) He also noted that this doctor "was able to achieve a best corrected vision right eye 20/30, left eye 20/50." (*Id.*) He also noted that, "[s]ince all of the laboratory tests and MRI all came back negative, no neurogenic etiology has yet been identified." (*Id.*)

In November of 2004, Dr. Fahim Ibrahim, M.D., also examined Plaintiff at the request of the FIA. (Tr. at 207.) He determined that without aid "counting fingers at 1 foot, both eyes, [Plaintiff's vision] improves to 20/70 both eyes with a +2.0 [and that] [t]he patient reads 20/60 right eye with an add of +2.0 and 20/40 left eye with an add of +2.0." (*Id.*) Dr. Ibrahim's assessment was that Plaintiff had a "[h]istory of uveitis" but had "[n]o ocular pathology seen on today's exam" such that he "cannot find a reason for this very poor vision." (*Id.*) Eight days after his examination, Dr. Ibrahim completed a "Medical Source Statement." (Tr. 212-13.) He stated that Plaintiff's ability to see was "unlimited" by impairments. (Tr. at 212.) He also found no communicative or environmental limitations. (Tr. at 213.)

Apparently due to an automobile collision on January 12, 2004, Plaintiff tore the rotator cuff of her right shoulder. (Tr. at 259-64; Dkt. 10 at 18.) Plaintiff's treating physician, James Beale, Jr., M.D., performed surgery to repair a torn rotator cuff on Plaintiff's right shoulder in November of 2004. (Tr. at 249.) An MRI of Plaintiff's right shoulder taken in February of 2005 showed "[n]o evidence of a retracted full thickness rotator cuff tear, status post rotator cuff repair [and] Hill-Sachs deformity of the humeral head." (Tr. at 230-36.) Pursuant to a referral from Dr. Beale, Plaintiff underwent physical therapy for shoulder pain from March through April of 2005. (Tr. at 217-27.) Plaintiff was discharged from therapy in late April 2005, after failing to attend scheduled therapy sessions. (Tr. at 217.) Her treating therapist opined that the condition of Plaintiff's shoulder had "plateaued." (*Id.*)

II

Plaintiff generally objects to the magistrate's recommendation that the Court should grant summary judgment in favor of Defendant. She also objects to the magistrate judge's recommendation that the Court should not remand the case pursuant to sentence six of 28 U.S.C. 405(g). Plaintiff did not specifically identify any other grounds on which she disagreed with the recommendation that the Court grant summary judgment in favor of Defendant. However, the cross-motions for summary judgment discussed whether the ALJ's decision was supported by substantial evidence, whether the ALJ properly weighed the medical opinions of Plaintiff's treating and examining physicians, and whether remand was appropriate. The Court will address all three issues.

III

The Commissioner of Social Security determines whether a claimant is disabled in accordance with a five step process. The claimant must demonstrate the four following criteria: (1) the claimant is not engaged in substantial gainful employment; (2) the claimant suffers from a severe impairment; (3) the impairment meets a "listed impairment;" and (4) the claimant does not retain the residual functional capacity to perform her relevant past work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). At the fifth and final step, the commissioner determines whether the claimant is able to perform any other gainful employment in light of the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v).

In a decision dated January 19, 2006, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listed impairments, 20 C.F.R. § 416.920(a)(4)(iii), and that due to her RFC, Plaintiff was able to perform a significant number of jobs in the national and regional economy. 20 C.F.R. § 416.920(a)(4)(v).

The Court reviews Defendant's decision to determine whether its "factual findings . . . are supported by substantial evidence." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990) (citing 28 U.S.C. § 405(g)). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). A district court does not resolve conflicts of evidence or issues of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The magistrate judge concluded that the ALJ's findings are supported by substantial evidence. The magistrate judge first considered whether the ALJ properly weighed the medical opinions of Plaintiff's treating and examining physicians. In her motion for summary judgment, Plaintiff argued that the ALJ gave too little weight to the opinions of Dr. Burman, who treated her vision problems, and gave too much weight to the opinions of the other physicians, including Drs. Van Stavern and Ibrahim, who each examined Plaintiff on a more limited basis. The magistrate judge recognized that an examining physician's opinion is entitled to more weight than a non-examining source, and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).

However, an ALJ is not required to give controlling weight to the opinion of a treating physician when it is "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When the ALJ denies benefits, the ALJ must explain "specific reasons for the weight given to the treating source's medical opinion," Soc. Sec. Rul. 96-2p, 1996 WL 374188, *5 (1996), and a failure to do so "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The magistrate judge concluded that the ALJ properly cited specific reasons for the weight accorded to the various medical opinions of Plaintiff's doctors. The ALJ did not give controlling or significant weight to Dr. Burman's opinion because it was not supported by other medical evidence in the record, it was inconsistent with other medical evidence in the record, it was internally inconsistent, and it was inconsistent with Plaintiff's own stated ability to care for herself.

The magistrate judge thoroughly analyzed each of these specific reasons the ALJ did not give Dr. Burman's opinion controlling weight; thus, the Court will not reiterate the analysis. The Court has reviewed the medical evidence, and the ALJ's decision, and agrees with the magistrate judge that the ALJ properly gave specific reasons for the weight given to the various medical opinions of Plaintiff's doctors.

The magistrate judge also concluded that substantial evidence supports the ALJ's conclusions as to Plaintiff's allegations that abdominal and upper extremity pain rendered her disabled. With respect to Plaintiff's abdominal ailments, Plaintiff's treating physician, who performed diagnostic tests, "found no source for her pre-existing abdominal pain." As the ALJ noted, Plaintiff did not submit any evidence of treatment related to abdominal pain dated later than October 15, 2002. With respect to Plaintiff's shoulder pain, an MRI showed post-surgical changes and "[n]o evidence of a retracted full thickness rotator cuff tear." Moreover, Plaintiff was discharged from follow-up physical therapy in part because she failed to attend scheduled therapy sessions. *See Young v. Califano*, 633 F.2d 469, 472-73 (6th Cir. 1980) (finding that "[r]egulations of the Social Security Administration provide for denial of benefits where a claimant willfully fails to follow prescribed treatment").

The magistrate judge also emphasized that the ALJ's findings were consistent with the opinions of the vocational experts who testified at Plaintiff's hearing. The vocational experts responded to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments, the objective record medical evidence as presented by Plaintiff's treating and examining physicians, and the daily activities in which Plaintiff indicated she engaged. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (finding that "[s]ubstantial

evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only if the question accurately portrays plaintiff's individual physical and mental impairments") (internal citation omitted). The Court has reviewed the medical evidence and the ALJ's opinion, and agrees with the magistrate judge that the Commissioner's decision is supported by substantial evidence.

IV

The magistrate judge correctly concluded that the Court cannot consider the additional evidence that Plaintiff submitted to the Appeals Council in order to determine whether the ALJ's decision was based on substantial evidence. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Richardson*, 402 U.S. at 401); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (noting that the Sixth Circuit has "repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review") (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).

Further, the magistrate judge correctly concluded that the additional evidence that Plaintiff submitted to the Appeals Council does not require the Court to remand the case to the ALJ for reconsideration in light of the additional evidence. As the magistrate judge recognized, remand is only appropriate where there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d at 357. To be "new," the evidence must have been "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496

U.S. 617, 626 (1990). To be "material," there must be "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). To demonstrate "good cause," a claimant must show "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)). The party seeking remand has the burden of showing that it is warranted. *See Sizemore*, 865 F.2d at 711. The magistrate judge concluded remand was not warranted because Plaintiff's evidence was not material.

While the magistrate judge concluded that the evidence is not material because the Appeals Council considered the evidence when it declined to review the ALJ's determination, further analysis is necessary. The magistrate judge's conclusion is sensible, because when the Appeals Council considered the evidence, and declined review, the Appeals Council also indicated that the evidence "does not provide a basis for changing the Administrative Law Judge's decision." In order for evidence to be "material," within the meaning of § 405(g), there must be "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Thus, it may be that the Appeals Council, in considering the evidence, yet declining to review the case, found that the evidence is not material.

However, at least one social security regulation suggests the opposite conclusion, that when the Appeals Council considers evidence, it has found that the evidence is material. The regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the Administrative Law Judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the Administrative Law Judge hearing decision.

20 C.F.R. § 404.970(b). Thus, the regulation appears to indicate that the Appeals Council does not "consider" evidence, unless the additional evidence submitted is new and material.

The Sixth Circuit has not concluded that the materiality of evidence, for the purpose of remand under § 405(g), is controlled by whether the Appeals Council considered the evidence when it declined review. Rather, the Sixth Circuit undertakes an independent assessment of whether evidence the plaintiff did not submit to the ALJ is "material." *See, e.g.*, *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477. 481, 483-84 (6th Cir. 2006). Consistent with Sixth Circuit precedent, the Court will independently assess whether the additional evidence submitted by Plaintiff to the Appeals Council is new and material.

In late March, 2006, Plaintiff submitted additional medical records from Detroit Medical Center/Harper Hospital, which were dated March 1, 2006. The medical records indicate that Dr. Gary Gilyard conducted an MRI on Plaintiff's right shoulder. The records provide:

> There is an acute full-thickness tear of the entire supraspinatus tendon and of the anterior aspect of the infraspinatus tendon with an AP dimension of 3 cm. The stump of the supraspinatus tendon is retracted 2.8 cm from the greater tuberosity. The teres minor and subscapularis tendons are intact. The long head of the biceps tendon is also intact and is within the bicipital groove although note is made that the long head of the biceps tendon does appear to be somewhat flattened proximally. This may relate to old trauma and is in any case unchanged from prior study. A Hills-Sachs fracture and a subtle Bankart fracture are noted. The labrum is otherwise intact.

(Tr. 295-99.) Also in late March, 2006, Plaintiff submitted additional medical records from Dr. Burman concerning her vision. Dr. Burman's report indicates that Plaintiff is "limited to non visual

activities." (Tr. 302.) The report also indicates that Plaintiff's vision without correction is 20/400, and with best corrections, 20/40 in the right eye and 20/50 in the left eye. (Tr. 301.)

In mid-June, Plaintiff submitted additional medical records and a report from Beaumont Hospital, dated April 27, 2006, May 12, 2006, and May 25, 2006. The medical records dated April 27, 2006 provide:

> Since [her right rotator cuff repair surgery in November 2004] the patient has continued to have constant pain in the right shoulder. She has tried Aleve and Tylenol 4 for the pain, neither of which have provided significant relief. The patient also tried eight weeks of physical therapy which did not help the pain. The patient also complains of left neck and shoulder pain occassionally. She also has problems with bilaterial hand and fourth digit numbness and burning pain for the past two months. She is having a work up for carpal tunnel syndrome including EMG by her primary care physician.

(Tr. 305.) The records also indicate:

> There is tenderness to palpitation about the entire shoulder. There is pain with any range of motion of the shoulder. The patient is able to forward raise her right shoulder to approximately 90 degrees. She has 0 degrees of external rotation and 5/5 strength in this direction. Internal rotation is to the level of the posterior-superior iliac spine.

(*Id.*) Finally, the records indicate: "The poor range of motion in this patient's shoulder is most likely due to constant splinting for the past 1 ½ years secondary to pain and gradual loss of range of motion." (Tr. 306.) Pursuant to the doctor's recommendation, Plaintiff underwent surgery on May 12, 2006. (Tr. 307-09.) A report dated May 25, 2006 indicates that Plaintiff was experiencing significant pain after the surgery. (Tr. 310.) The report indicates that Plaintiff was required to wear a sling for six weeks after the surgery, and that she would begin physical therapy six weeks after the surgery. (*Id.*)

Plaintiff also submitted to the Appeals Council in mid-June, a letter written to her by Dr. Gary Gilyard, dated June 9, 2006. The letter addresses Plaintiff's MRI and provides:

> [Y]ou have a very large redundant ballooned out posterior capsule. The posterior capsule is stretched out, there is a lot of dye filling this area up, indicating you have some posterior instability. That would mean your arm hurts when you put your thumb down and move your arm across your body, it would be painful. You also have anteriorly, what looks like the labrum has been pulled away from the glenoid, which is the socket and there is dye leaking along the anterior aspect of the glenoid, so it looks like there is a labral detachment and there is some instability anteriorly.
>
> It is a very complex problem and I think probably that the rotator cuff has been put under stress, because the shoulder is unstable. . . . I do think that all of these things occurred with the accident at that same time.

(Tr. 312.)

First, the additional records Plaintiff submitted from Dr. Burman are not new and material.[3] Dr. Burman's conclusion that Plaintiff is "limited to non-visual activities" is cumulative of the evidence Dr. Burman previously provided, which was already considered by the ALJ. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (finding that evidence which is "largely cumulative" is not material). Moreover, Dr. Burman's additional records do not bolster the credibility with which the ALJ viewed Dr. Burman's previous records. While Dr. Burman's previous records indicated that he was not able to record a visual acuity for Plaintiff better than 20/200, the additional records indicate that he was able to achieve best corrections of 20/40 in Plaintiff's right eye and 20/50 in her left eye. This additional evidence is consistent with the medical records of Plaintiff's other physicians, to which the ALJ assigned greater weight. Moreover, evidence that Plaintiff's corrected vision is better than 20/200 does not support a finding that Plaintiff's impairments meet or equal a listed impairment as required by 20 C.F.R. § 416.920(a)(4)(iii). *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1226 (6th Cir. 1988) (citing 20 C.F.R. §§ 404.1581). Thus, the evidence provided by Dr. Burman is not new and

---

[3] Plaintiff does not specifically address this additional evidence in her objections.

material because there is not "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Second, the additional records Plaintiff submitted from Dr. Gilyard are not new and material. Plaintiff argues the records are material because they demonstrate that Plaintiff is unable to perform occasional overhead reaching, and unable to use her right upper extremity as a helper. Plaintiff asserts that the unskilled occupations for which she has the RFC require bilateral manual dexterity.

It is well-settled that "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (citing *Sizemore*, 865 F.2d at 712); *Sizemore*, 865 F.2d at 712 (finding that "[e]vidence which reflect[s] the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began"). Moreover, a claimant must follow treatment prescribed by his or her doctor in order to receive benefits. *See* 20 C.F.R. § 404.1530 (instructing claimants: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits").

Although Dr. Gilyard indicated that "I do think that all of these things occurred with the accident [in January 2004]," Plaintiff did not attend the physical therapy sessions that Dr. Beale prescribed subsequent to Plaintiff's rotator cuff repair surgery in November, 2004. Plaintiff discontinued therapy in April, 2005, and has not presented any evidence that she sought any other treatment for her right upper extremities until a year later, in April, 2006. Thus, the additional

medical records of Dr. Gilyard are not new and material because there is not "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. If Plaintiff's condition deteriorated subsequent to the ALJ's decision in January 2006, as the evidence suggests may be the case, "the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." *Id.* at 712 (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Even if any of Plaintiff's additional evidence is new and material, Plaintiff has not shown good cause for failing to obtain the additional information and to submit it in an earlier proceeding. *See Oliver*, 804 F.2d at 966 (holding that "in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing") (citing *Willis*, 727 F.2d at 554); *Cline*, 96 F.3d at 149 (finding no showing of good cause when post-hearing, the claimant's attorney failed to notify the ALJ he had decided to send his client for a psychiatric evaluation, and the evaluation was not completed until after the ALJ issued a decision). Plaintiff has not advanced any reasons for discontinuing therapy in April 2005, or for not obtaining information related to her upper extremity ailments until after the ALJ rendered a decision in January, 2006; thus, Plaintiff has not shown good cause for failing to submit the information to the ALJ.

Ultimately, Plaintiff has not shown that the Court is required to remand the case under sentence six of 28 U.S.C. § 405(g), because the additional evidence Plaintiff submitted is not new and material, nor has Plaintiff shown good cause for failing to submit it in an earlier proceeding before the ALJ. Thus, the Court will not remand the case for consideration of the additional evidence.

In conclusion, the Court agrees with the magistrate judge that, under the governing standards, the ALJ's decision was within the range of discretion allowed by law and is supported by substantial evidence.

IV

Accordingly, it is **ORDERED** that the report and recommendation [Dkt. # 18] is **ADOPTED**, with the reservation noted, and that Plaintiff's objections to the report and recommendation [Dkt. # 19] are **OVERRULED**.

It is further **ORDERED** that Defendant's motion for summary judgment [Dkt. # 17] is **GRANTED**, and that Plaintiff's motion for summary judgment [Dkt. # 10] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 25, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 25, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS